THE STATE OF KANSAS, *on the relation of S. B. Bradford, Attorney General,* v. THE WESTERN IRRIGATING CANAL COMPANY.

CORPORATION — *Powers — Sale of Property.* . An irrigating company, incorporated under the laws of the state, to construct and operate a canal for irrigation, water works, and manufacturing purposes, has the power, with the assent of its stockholders, to sell and convey to another irrigating corporation its right-of-way, canal, personal and real property, if the same is done in good faith, and not for the purpose of delaying or defrauding creditors.

*Original Proceedings in Quo Warranto.*

ON May 16, 1887, *The State of Kansas,* upon the relation of Hon. S. B. Bradford, the attorney general, filed its petition in this court against *The Western Irrigating Canal Company,* praying that the company be required to show by what authority it holds, possesses, and assumes to exercise the powers, privileges, and franchises granted to the Enterprise Irrigating Company; and that the plaintiff have judgment of ouster against the defendant in the further exercise of such powers, privileges and franchises; and that the company be declared by the judgment of this court to be incapable of exercising the same.   On July 1, 1887, the defendant filed its answer, alleging:

"That the supreme court of the state of Kansas ought not to take jurisdiction in this case, for the reason that no public

question is involved therein; that this suit was instituted at the request and suggestion of the attorneys of one A. T. Soule, who is the principal owner of the Eureka Union and so-called Low-line irrigating canals; that the canals of this defendant and of the said A. T. Soule come into competition with each other, and the said A. T. Soule is attempting to monopolize the entire irrigating business of Ford county, and as a part of his said design to monopolize the irrigating business as aforesaid, he is endeavoring by all means in his power to obstruct, hinder and delay this defendant in the construction of its canal; that in order to protect its rights, the defendant, prior to the institution of this suit, brought a suit in the district court of Ford county, against the Low-line Canal Company, one of the companies above named, which is now pending and undetermined; that it was upon the representation and statements of the said Soule and his attorneys that the attorney general was induced to bring this suit, and the institution thereof is one of the means used by the said A. T. Soule to hinder, delay, annoy and oppress this defendant; and that the matters involved in this suit are solely matters of private interest between this defendant and the said A. T. Soule, and not of a public nature.    Defendant therefore asks the supreme court to dismiss said suit.

"Further answering, the defendant denies that it has assumed or pretended as of right to possess or use, pursuant to a purchase, the franchise of the Enterprise Irrigating Company; denies that it is now unlawfully exercising or in any manner using the powers, privileges or franchises of the said Enterprise Irrigating Company; denies that it has attempted, by purchase or otherwise, to succeed to the franchises authorized by law to be exercised by the said Enterprise Irrigating Company; denies that it is usurping, intruding into, or is unlawfully holding or exercising any franchise whatever.

"And further answering, defendant says: It has no knowledge or information of the existence of a corporation named the Enterprise Irrigating Company, or that any such company ever existed in the state of Kansas, or at any other place."

Trial had at the June sitting of the court for 1888. At the time of the hearing, the following stipulation was filed by the parties, omitting court and title:

"It is hereby stipulated and agreed between the plaintiff and defendant herein, that after the incorporation of the En-

7—40 KAS.

terprise Irrigating Company, defendant, said company proceeded to acquire a right-of-way for its irrigating ditch or canal, along the route indicated upon its profile and map, which was made and filed, as in such cases provided by law, and that said company procured such right-of-way for nearly or quite the proposed entire length of its said canal; that the route of said canal lay mostly along and across the public unoccupied lands of the United States, and that the right-of-way over the same was acquired by said company, (with the exception of a few pieces purchased,) under and by virtue of the laws of the United States and the rules and regulations of the commissioner of the central land office, enacted and established for the purpose of conferring a right-of-way over the public lands for such irrigating canals or ditches; and that said Enterprise Company had so acquired its right-of-way over the public domain and across certain part of entered lands for the entire length of the proposed ditch, to wit, about 24 miles, prior to the execution of its deed attempting to convey its right-of-way, etc., to the Western Irrigating Canal Company.

"And it is further stipulated and agreed, that the route, line and profile of the Western Irrigating Canal Company is practically the same as that laid out and proposed by the said Enterprise Irrigating Company, and which is attempted to be conveyed by the said Enterprise Company by said deed to the Western Irrigating Company.

"It is further agreed that, after the execution of the deed herein referred to, the Western Irrigating Canal Company took possession of the property and right-of-way of the Enterprise Company, and commenced work; and that said Western Company has since performed the larger part of the work done; and the improvements at this time are worth about $6,000."

A deed was also offered in evidence by the plaintiff, showing that on the 11th day of December, 1886, the Enterprise Irrigating Company sold, conveyed and quitclaimed to the Western Irrigating Canal Company, for the sum of ten thousand dollars, its right-of-way, together with its canal, or ditch; and also all of its franchises, rights, interests, and property of every nature, kind and description whatsoever.

*S. B. Bradford,* attorney general, and *Waters, Chase & Tillotson,* for plaintiff.

*J. F. Frankey,* for defendant.

The opinion of the court was delivered by

HORTON, C. J.: It is claimed that the Enterprise Irrigating Company, even if its stockholders desired it, had no right to sell all of its property, surrender its franchises, and terminate its existence, without the assent of the state; therefore, that the Western Irrigating Canal Company could not exercise the powers, privileges and franchises granted to the Enterprise Company. For the purposes of this case, we assume this to be true, and that so much of the deed of December 11, 1886, as attempts to transfer and convey the franchises of the Enterprise Company, is wholly void; and yet we do not think the plaintiff is entitled to its judgment of ouster in this action. The Enterprise Company was organized under the laws of the state, and had the power, during its existence as a corporation, "to hold, purchase, mortgage, or otherwise convey such real and personal estate as the purposes of the corporation should require; . . . also to enter into any obligation or contract, essential to the transaction of its ordinary affairs." (Comp. Laws of 1885, ch. 23, § 11. See also the general provisions of chapter 23, Compiled Laws of 1885, relating to private corporations.) The word "franchise" is generally used to designate a right, or privilege, conferred by law. What is called "the franchise of forming a corporation," is really but an exemption from the general rule of the common law prohibiting the formation of corporations. All persons in this state have now the right of forming corporate associations upon complying with the simple formalities prescribed by the statute. The right of forming a corporation, and of acting in a corporate capacity under the general incorporation laws, can be called a franchise only in the sense in which the right of forming a limited partnership, or of executing a conveyance of land by deed, is a franchise. (2 Morawetz, Priv. Corp., § 923.) Even if the Enterprise Company had attempted so to do, it could not, we suppose, sell or convey its corporate name, or its right to maintain and defend judicial proceedings, or to make and use a common seal.

It is not essential to the existence of a corporation that it should possess property. Its legal existence, therefore, is not necessarily determined by the deed or its attempted conveyance. Its franchises remained, although the corporation may have conveyed all its property. There is no stockholder or creditor intervening or objecting. Therefore we are not called upon to consider the rights of such parties. There is no complaint that the property of the Enterprise Company was not properly acquired, and that the corporation legally owned it. The power to sell or dispose of the same necessarily attached as an incident to the ownership. If the corporation could convey a part, it could convey all, if its stockholders assented, and its creditors, if it had any, did not interfere or object. It may be that the business of the Enterprise Company had proved unprofitable, and rendered it necessary to dispose of its property and wind up the concern, as the only means of avoiding insolvency. It may have been necessary to sell the whole of its property in order to raise means to pay its debts and avoid a sacrifice by forced sale. In either event, the sale and conveyance of the property with these objects in view would be a lawful purpose of the corporation. (*Miners' Ditch Co. v. Zellerbach*, 37 Cal. 543; *Willamette Manufacturing Co. v. Bank of British Columbia*, 119 U. S. 191; *Town v. Bank*, 2 Doug. [Mich.] 530; *Boston Glass Manufactory v. Langon*, 41 Mass. [24 Pick.] 49.)

A private person could make a transfer of all his property if it was done *bona fide*. Now the Enterprise Company possessed all of the powers of a private person in regard to the disposition of its property. It had the absolute *jus disponendi*.

The route and profile of the Western Irrigating Canal Company is practically the same as that laid out and proposed by the Enterprise Company. The Western Company under the statute has full power to purchase and hold real and personal estate for the purposes of the corporation; therefore the Western Company was acting for the benefit of its stockholders when it purchased and took possession of the right-of-way of the Enterprise Company, and in purchasing and taking pos-

session of such property it was carrying out the purposes of its corporation. Under its charter it had the power to excavate and construct an irrigating canal, commencing at some point in section 35, in township 27 south, of range 22 west, on the north bank of the Arkansas river, in Ford county, Kansas, with dam, and such lateral ditches as it deemed necessary for irrigation, water works and manufacturing purposes. Upon the agreed statement of facts and the evidence produced upon the trial, the Western Canal Company is only exercising the powers, privileges and franchises conferred by its charter of November 26, 1886. In taking possession of, and in using, the property purchased of the Enterprise Company, it exercises its own rights and privileges.

· Again, all of the franchises of the Enterprise Company have been extinguished by the state, in an action brought in this court for that purpose. The state has resumed its franchises, and that company is no longer in existence; therefore the Western Canal Company cannot exercise the powers, privileges and franchises granted the Enterprise Company, because they have been taken away by the state, and the latter company has no franchises to be exercised by any person or corporation.

Further, if the deed from the Enterprise Company to the Western Company transfers and conveys nothing, as it is alleged, then of course there is nothing to complain of. If the Western Company has not obtained any right or title to the public domain over which its right-of-way is laid out, the state has no cause of action therefor.

Judgment will be rendered in favor of the defendant for all costs.

All the Justices concurring.