**JEFFERSON INDUSTRIAL BANK, President's Oil Company, and Ronald F. Weiszmann, Plaintiffs–Appellants,**

v.

**FIRST GOLDEN BANCORPORATION, John A. Fortune, Francis X. Sweeney, Warren R. Henson, William F. Fortune, G. Scott Gagon and Frederick J. Pattridge, Defendants–Appellees.**

No. 87CA0366.

Colorado Court of Appeals, Div. I.

Sept. 15, 1988.

Kelly, Stansfield & O'Donnell, Timothy J. Flanagan, James B. Tompkins, Denver, for plaintiffs-appellants.

Holland & Hart, James E. Hartley, Scott S. Havlick, Denver, for defendants-appellees.

REED, Judge.

The plaintiffs, Ronald F. Weiszmann, Jefferson Industrial Bank, and President's Oil Company, each a shareholder in First Gold-

---

* Sitting by assignment of the Chief Justice under provisions of the *Colo. Const.,* art. VI, Sec. 5(3),

and § 24–51–607(5), C.R.S. (1982 Repl.Vol. 10).

en Bancorporation (First Golden), appeal from a summary judgment in favor of First Golden and its individual officers and directors of the corporation (defendants). We reverse and remand.

First Golden is a Delaware corporation authorized to do business in Colorado with its principal place of business in Golden, Colorado. Plaintiff Weiszmann is the sole owner of Jefferson Industrial Bank (JIB) and President's Oil Company (POC). Weiszmann, individually and through JIB and POC, was a stockholder in First Golden.

In April 1985, Weiszmann and POC made a tender offer to acquire additional shares of First Golden common stock. To facilitate the tender, Weiszmann requested a current list of all First Golden shareholders. First Golden denied the request on the ground that it did not comply with Delaware law governing shareholder access to corporate books and records.

Weiszmann thereafter filed suit seeking damages pursuant to § 7–5–117, C.R.S. (1986 Repl.Vol. 3A), which authorizes the assessment of a penalty against a corporation and its officers for improperly denying a shareholder's request for information. Defendants moved for summary judgment on the ground that the Colorado statute has no application to foreign corporations or their agents.

In granting summary judgment, the trial court ruled that the Colorado Corporation Code distinguishes between domestic and foreign corporations and that the terms "corporation or domestic corporation" and "foreign corporation" are separately defined under the definitional section of the code, §§ 7–1–102(5) & (8), C.R.S. (1986 Repl.Vol. 3A). The trial court concluded that the omission of the term "foreign corporation" from the language of § 7–5–117, C.R.S. (1986 Repl.Vol. 3A) meant that the Colorado statute does not apply to foreign corporations.

## I.

In addressing the merits of plaintiffs' claim, we must first determine whether choice of law principles favor the application of Delaware law or the law of Colorado.

*Restatement (Second) of Conflict of Laws* § 304 comment d (1971), states:

"The right of a shareholder to inspect the books of a corporation ... is an issue which can practicably be determined differently in different states. This is also an issue which, if decided differently in different states, will not seriously undermine the policy favoring uniform treatment for all shareholders of a corporation. *For these reasons, a court will apply to a foreign corporation doing substantial business in the state a local statute providing for the inspection of books by a shareholder if in the court's opinion the statute embodies an important policy.*" (emphasis added)

The purpose of the shareholder inspection statute, as recognized by Colorado courts, is to safeguard the rights of shareholders. *See Beebe v. Star–Stop, Inc.*, 32 Colo.App. 345, 513 P.2d 743 (1973), *rev'd in part on other grounds, Beebe v. Pierce*, 185 Colo. 34, 521 P.2d 1263 (1974) (purpose of statute is to ensure that corporate officers and directors act responsibly toward shareholders).

Courts in other jurisdictions have upheld the application of forum state shareholder inspection statutes to foreign corporations and their agents, particularly where the corporate records sought for inspection are within the forum state or the corporation is authorized to do business in the state. *See Padovano v. Wotitzky*, 355 So.2d 871 (Fla. Dist.Ct.App.1978); *Kahn v. American Cone & Pretzel Co.*, 365 Pa. 161, 74 A.2d 160 (1950); *Toklan Royalty Corp. v. Tiffany*, 193 Okla. 120, 141 P.2d 571 (1943). *See generally* Annot., 19 A.L.R.3d 869 at 885–891 (1968).

Provisions of the Colorado Corporation Code are applicable to foreign corporations where choice of law principles permit such application and the foreign corporation has transacted substantial business in Colorado. *See Ficor, Inc. v. McHugh*, 639 P.2d 385 (Colo.1982). The record here reflects that First Golden, a bank holding company, owns and operates three banks in

Colorado, and that its principal place of business is in Golden, Colorado. First Golden, in fact, concedes that the corporation has substantial contacts with the state of Colorado. Accordingly, the Colorado Corporation Code provisions concerning inspection of corporate records by a shareholder govern here.

## II.

Plaintiffs contend that the trial court erred in ruling that foreign corporations are exempted from the prescriptions of the Colorado shareholder inspection statute. We agree that this was error.

Section 7–9–104, C.R.S. (1986 Repl.Vol. 3A) of the Corporation Code provides that:

"A foreign corporation which has received a certificate of authority under this code shall, until revocation or withdrawal thereof as provided in this code, enjoy the same but no greater right and privileges as a domestic corporation and, *except as otherwise provided in this code, shall be subject to the same duties, restrictions, penalties and liabilities imposed upon a domestic corporation of like character.*" (emphasis added)

The shareholder inspection statute, § 7–5–117, C.R.S. (1986 Repl.Vol. 3A), provides in relevant part:

"(1) *Each corporation* shall keep correct and complete books and records and shall keep ... record of its shareholders giving the names and addresses of all shareholders and the number and class of the shares held by each.

. . . .

"(3) any officer or agent who, or a corporation which, refuses to allow any ... shareholder ... to examine and make extracts from its books and records or accounts, minutes and record of holders of shares and of voting trust certificates therefore, for any purpose, is liable to such shareholder or holder of voting trust certificates for a penalty of ten percent of the value of the shares owned

by the shareholder...." (emphasis added)

Whether the term "corporation" when used in the Corporation Code applies to foreign corporations as well as domestic corporations depends upon the subject matter of the statute, its policy, and the context in which the term is employed. *See Toklan Royalty Corp. v. Tiffany, supra; see also Ficor, Inc. v. McHugh, supra; Admiral Corp. v. Television Sales & Service, Inc.*, 138 Colo. 157, 330 P.2d 1106 (1958). There is nothing in the language of the inspection statute which indicates an intention on the part of the General Assembly to limit its effect to domestic corporations, nor do policy considerations lead us to that conclusion. We do not believe that the definitional section of the code has "otherwise provided" that the inspection statute is not applicable. Therefore, § 7–9–104, C.R.S. (1986 Repl.Vol. 3A) must be construed to apply equally to foreign and domestic corporations.

Because First Golden was a duly authorized foreign corporation, the provisions of § 7–9–104, C.R.S. (1986 Repl.Vol. 3A) subject the corporation to the same "duties, restrictions, penalties and liabilities" as a domestic corporation, and the trial court erred in failing to so hold.

The judgment of the trial court is reversed and the cause is remanded for further proceedings consistent with the views expressed herein.

PIERCE and CRISWELL, JJ., concur.